UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT ALLAWAY,

                              Plaintiff,

                                                      DECISION AND ORDER

                                                      03-CV-6071L

              v.

SUPERINTENDENT MICHAEL MC GINNIS,
et al.,

                              Defendants.
_____


        Plaintiff, Robert Allaway, appearing *pro se*, commenced this action under 42 U.S.C. § 1983.

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services

("DOCS"), has sued a number of DOCS employees, alleging that his constitutional rights were

violated in certain respects in 1999 while plaintiff was confined at Southport Correctional Facility.

        Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.  Plaintiff has not responded to the motion.  For the reasons that follow, the motion

is granted.

**DISCUSSION**

**I. Plaintiff's Failure to Respond to the Summary Judgment Motion**

Rule 56(e) of the Federal Rules of Civil Procedure provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Court of Appeals for the Second Circuit has held that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999); *see also Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2d Cir. 2001).

In the instant case, defendants' notice of motion (Dkt. #52) gave plaintiff notice of the requirements of Rule 56 and the consequences of failing to respond properly to a motion for summary judgment. The notice of motion states, in part, that "you must respond, by affidavits or as otherwise provided in the rule, setting forth further specific facts showing that there are genuine issues of material facts for trial. Any factual assertions in [defendants' affidavits] will be accepted by the Court as being true unless you submit affidavits or other documentary evidence contradicting our assertions. If you do not respond to the defendants' motion as described above, summary judgment, if appropriate, may be entered against you. **If summary judgment is entered against you, your case ... will be dismissed.**"

This Court's scheduling order (Dkt. #72), which gave plaintiff until August 10, 2006 to respond to defendants' motion, also apprised plaintiff of the necessity of responding to defendants'

motion, stating in part, that:  "THE CLAIMS PLAINTIFF ASSERTS IN HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE DOES NOT RESPOND TO THIS MOTION by filing his own sworn affidavits or other papers as required by Rule 56(e)."  It further states:  "Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint.  Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial"; "Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendants"; and "If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true.  Judgment may then be entered in defendants' favor without a trial."

Still more notice was given by this Court's "*Irby*" notice issued on July 14, 2006 (Dkt. #73). The notice states in part that "[f]ailure to respond to a motion for summary judgment may result in the grant of judgment in favor of the party seeking summary judgment and the dismissal of all or part of the case.  ... Therefore, ... you **MUST** submit opposing papers in the form of one or more affidavits ...," as well as a "concise statement of the material facts as to which you contend there exists a genuine issue which must be tried."  The notice warned plaintiff that "all of the material facts which have been set forth in the statement served on you by the moving party ... will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue regarding a trial."

Plaintiff was apparently aware of his obligation to respond to defendants' motion, since in an undated letter received by the Court on August 23, 2006, requesting an additional thirty days to respond (Dkt. #74). The Court granted that request, and gave plaintiff until September 11 to file his response (Dkt. #75).

In a letter dated September 6, 2006, plaintiff asked for a second thirty-day extension because of his limited access to a law library. The Court "So Ordered" the letter, giving plaintiff until October 16 to file a response to defendants' motion (Dkt. #76).

In a letter filed with the Court on October 4, 2006, plaintiff asked for a third extension, on the ground that "the prison ha[d] been locked down since [his] previous request" (Dkt. #78). The Court granted that request, extending plaintiff's deadline to November 1.

In a letter filed on October 25, plaintiff made his fourth request for an extension of time, stating that he had been confined to his cell for suspicion of gang-related activity (Dkt. #80). I granted that request on October 25, giving plaintiff until December 18 to file a response, and adding that "absent extraordinary circumstances, this is the last extension to respond to defendants' summary judgment motion" (Dkt. #81). Plaintiff has not contacted the Court or submitted any papers since.[1]

The mere fact that plaintiff has failed to respond to defendants' motion does not mean that summary judgment should be "granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see also Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Rather, summary judgment may be granted as long as plaintiff has received notice that

---

[1] According to the DOCS internet inmate lookup service, http://nysdocslookup.docs.state.ny.us, plaintiff is currently incarcerated at Auburn Correctional Facility, which is the return address on plaintiff's October 25 request for an extension of time.

- 4 -

failure to file an opposition may result in dismissal of his case and the Court is satisfied that the undisputed facts "show that the moving party is entitled to a judgment as a matter of law." *Champion*, 76 F.3d at 486 (quoting Fed.R.Civ.P. 56(c)).  *See*, *e.g.*, *Strine v. Sodus Cent. School Dist.*, 403 F.Supp.2d 279, 280 (W.D.N.Y. 2005).

Here, plaintiff has been given more than adequate notice of the nature of a summary judgment motion and the consequences of his failure to respond to the motion.  In spite of that, he has not responded to defendants' motion.  Therefore, the Court will not simply grant defendants' motion automatically, but will accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment.

## II. Defendants' Motion

Based on defendants' unrebutted affidavits and Rule 56 statement, I find that defendants are entitled to summary judgment.  First, as to plaintiff's claims of inadequate medical care, the record shows that the care given to plaintiff was constitutionally adequate, and there is no indication that any of the medical staff defendants acted with deliberate indifference to his serious medical needs. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

With respect to plaintiff's excessive-force claim, it is likewise clear that no constitutional violation occurred.  "To establish a constitutional violation under the Eighth Amendment[ for using excessive force], an inmate must meet both an objective and a subjective requirement."  *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).  Objectively, "the alleged violation must be sufficiently serious," taking into account the context of the alleged use of force and "contemporary standards of decency."  *Id.* (internal quotes omitted).  Subjectively, "the inmate must show that the prison

officials involved 'had a wanton state of mind when they were engaging in the alleged misconduct,'" *id.* (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994)).  This determination entails several factors, including "the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between the need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of the forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

In the case at bar, defendants have submitted a videotape of the incident giving rise to plaintiff's excessive-force claim.  On the tape, which was taken on the afternoon of May 28, 1999, a correction officer explains that Allaway is refusing to come out of his outdoor exercise "pen."  The officer walks up to the door of the pen, which is enclosed by a wire mesh or chain-link fence, and asks plaintiff to come out.  Allaway, who is leaning against one side of the fence several feet away, refuses.  The officer asks Allaway several times to exit "the easy way," and assures plaintiff that nothing will happen to him if he comes out voluntarily, but Allaway does not respond.

A six-man extraction team wearing helmets and body armor then approach the pen.  Allaway is given one last chance to come out voluntarily, but he again refuses.  As an officer begins to unlock the door, Allaway turns to face the door, and he appears to tense his body as if preparing either to defend himself or to charge.  As soon as the door opens, Allaway lunges toward the doorway, where he is immediately met by the lead officer, who is wearing a transparent plexiglass shield on his arm. The officers enter the pen, wrestling Allaway to the ground.

From that point, Allaway is surrounded by the officers and is not clearly visible for much of the time, but it appears that he continues to struggle even after he is on the ground, and that the

- 6 -

officers are trying with some difficulty to get his hands behind his back and handcuff him.  During this struggle, one officer, whom defendants have identified as defendant Randy Banks, who is also down on the ground, is seen cocking his right arm back a short distance and punching Allaway a total of four times.  Eventually Allaway is subdued, after which he is placed on a gurney and removed from the pen.

Having watched the videotape, I find that even if the record is viewed in the light most favorable to plaintiff, defendants are entitled to summary judgment on plaintiff's excessive-force claim.  Plaintiff's own refusal to come out of his exercise pen necessitated the use of some force, and that force was used only after plaintiff ignored repeated pleas to come out "the easy way."  Furthermore, when the door to his pen was opened, plaintiff not only resisted the officers, but charged toward them in an apparent attempt either to get past them or simply to attack them, thus adding to the need to use force to subdue plaintiff.

The four punches delivered to plaintiff by Banks also do not give rise to any genuine issue of material fact.  The punches (which Banks describes in a sworn, unrebutted declaration as "softening blows" administered "for the sole purpose of getting plaintiff to comply with the officers [sic] orders," Dkt. #54 ¶ 7) were not wild, thrashing, unrestrained blows, but were delivered in a deliberate, methodical manner from a relatively short distance, while plaintiff was still struggling and resisting the officers' attempts to place mechanical restraints on him.  No rational factfinder could conclude that these four punches met either the objective or subjective components of an Eighth Amendment violation.  *See Stanley v. Hejirika*, 134 F.3d 629, 635-36 (4th Cir. 1998) (videotape of incident between inmate plaintiff and defendant officers "reveal[ed] no evidence of malicious or sadistic conduct" on defendants' part; although the "officers used significant physical

force in subduing Stanley, ... they also had objectively reasonable grounds to believe that such force was necessary, and hence were entitled to judgment in their favor); *Brown v. Mravintz*, No. CIV A 04-30J, 2006 WL 3717417, at *8 (W.D.Pa. Dec. 14, 2006) (defendants were entitled to summary judgment on inmate's excessive-force claim, since no reasonable juror viewing videotape of incident could find for plaintiff); *Felder v. New Jersey*, No. 03-6100, 2006 WL 3751347, at *5 (D.N.J. Dec. 19, 2006) ("no reasonable fact finder could conclude, based on the evidence in the record, that the Correction Officers violated Plaintiff's Eighth Amendment right against excessive force," where videotape showed that officers "were professional and did not exert excessive force to extract Plaintiff from his cell"); *Martin v. Serrell*, No. 4:03CV3130, 2006 WL 488718, at *3 (D.Neb. Feb. 27, 2006) (stating that "[t]he videotape of the search [of inmate's person] does not reveal the kind of unnecessary and wanton infliction of pain prohibited by the Eighth Amendment," and that "the entire process, insofar as it could be observed, involved no excessive force, and no unduly aggressive behavior, verbal abuse or unprofessional conduct"); *Boomer v. Lanigan*, No. 00 Civ. 5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (where inmate plaintiff "presented no evidence in response to the DOCS Defendants' video tape or motion papers," plaintiff could not establish that extraction team members acted with wantonness or that their use of force constituted an objectively sufficiently serious deprivation of his constitutional rights); *see also El v. Ordiway*, 198 F.3d 244 (table), 1999 WL 993891, at *1 (6th Cir. 1999) (district court properly granted summary judgment for defendants on inmate's excessive-force claim, since videotape supported defendants' account of incident, in which plaintiff refused to follow orders, thereby forcing officers to physically restrain him).

In short, the record conclusively establishes that the force used here was reasonably necessary under the circumstances, and that defendants did not act with any wanton desire to inflict pain on plaintiff.  In fact, the evidence shows that defendants behaved in a professional manner and with admirable restraint throughout this incident.  Bearing in mind that "deference extends to a prison security measure taken in response to an actual confrontation" with a violent inmate, "just as it does to prophylactic or preventive measures intended to reduce the incidents of ... breaches of prison discipline," *Whitley v. Albers*, 475 U.S. 312, 322 (1986), and that this deference "requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice," *id.*, I conclude that defendants are entitled to summary judgment on plaintiff's claim of excessive force.[2]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #52) is granted, and the complaint is dismissed.

Plaintiff's motion for appointment of counsel (Dkt. # 48) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 8, 2007.

---

[2]Having reached this conclusion, I find it unnecessary to address defendants' arguments that the claims against some defendants should be dismissed for lack of personal involvement.  My findings on the excessive-force claim also renders moot plaintiff's claims for failure to train and failure to intervene, since there is no viable underlying Eighth Amendment claim to support those claims.